HEARD APRIL TERM, 1876.

## GREENVILLE AND COLUMBIA RAILROAD COMPANY *vs.* MAFFETT.

A surety on a bond given by an agent of a railroad company for the faithful perform-
ance of his duties as agent is not released by his discharge in bankruptcy from
liabilities accruing under the bond after the estate of the surety is settled up by
his assignee; but from liabilities accruing before that time he is released by his
discharge.

A discharge in bankruptcy releases the bankrupt only from such claims against him
as are provable against his estate at the time it is settled up by his assignee.

A bond for the faithful discharge of his duties by an agent is a continuous indemnity,
binding the sureties from time to time as breaches occur; and until there is a breach
there is no debt of the surety, either existing or to become due, which can be
proved against his estate in bankruptcy.

### BEFORE MOSES, J., AT NEWBERRY, AUGUST, 1875.

This was an action by the Greenville and Columbia Railroad
Company against Levi Bates Maffett, Robert Maffett and David
Kibler.

The case, as agreed upon by counsel and set forth in appellants
brief, is as follows:

1. Levi Bates Maffett, as principal, and Robert Maffett and
David Kibler, as his sureties, executed their bond to the Green-
ville and Columbia Railroad Company on the 15th day of Septem-
ber, A. D. 1856, in the penal sum of $3,000, conditioned for the
faithful performance of his duties as the agent of the obligee at
Prosperity or Frog Level station by the said L. B. Maffett.

2. Among the duties undertaken in said bond by the said L. B.
Maffett, as agent, were those of " collecting all dues for freight and
passage, and accounting for and paying the same to the Auditor
and Treasurer of said company," and of "discharging faithfully
every duty now appertaining or hereafter to be assigned to his
office."

3. L. B. Maffett continued to act as agent of the plaintiff until
the      day of February, A. D. 1872, when he was removed.

4. The indebtedness of the said L. B. Maffett at the date of his
removal amounted, after allowing all proper credits, to $1,803.47.

5. David Kibler, one of the sureties above named, filed his peti-
tion in voluntary bankruptcy, in the District Court of the United
States for the District of South Carolina, on the 27th day of Feb-
ruary, A. D. 1868. He received his discharge in bankruptcy on
the 7th day of November, A. D. 1868. His estate in bankruptcy

was settled up by John T. Peterson, his assignee, in September, 1870.

6. L. B. Maffett was in arrear, as agent, continuously to the plaintiff, for a long period before his removal, and before the filing of David Kibler's petition in bankruptcy, as shown by the monthly balances struck at the office of the plaintiff, at Columbia, S. C.; certainly as far back as the month of December, 1866.

7. L. B. Maffett was indebted, as agent, to the plaintiff in the sum of $806.57 at the time of the filing of Kibler's petition in bankruptcy; on 31st October, 1868, in the sum of $845.23; on 30th November, 1868, in the sum of $877.45; on 31st August, 1870, in the sum of $1,250.86; on 30th September, 1870, in the sum of $1,249.30—the amount of indebtedness varying from month to month, but there being always an indebtedness, between $471.33, the lowest, and $1,951.99, the highest, between the month of December, 1866, and the month of February, 1872, the date of his removal.

8. A balance was struck at the chief office of the railroad, at Columbia, at the end of every month, on the accounts between the railroad and its agents, and the balance so found, whether for or against the agent, was forwarded at once to each agent.

9. There was a similar balance struck each week between the railroad and its agents, respectively, and from these, after giving the agents opportunity to correct errors, the monthly balance was made up.

10. It was the rule of the railroad company that an agent should promptly pay over, at the chief office in Columbia, the balance found to be due by him at the end of each month to the company.

11. The railroad company was aware of the bankruptcy of David Kibler, and endeavored to procure from L. B. Maffett a new bond and a settlement of L. B. Maffett's deficits; and for this purpose the President of the company sent one Burr J. Ramage, one of its agents, to L. B. Maffett at the close of 1869 or early in the year 1870.

12. The plaintiff sought, in this action, an account of the agency of L. B. Maffett, and demanded judgment against all the defendants for the sum of $1,873.47, as the balance due from Maffett, as agent, on 29th February, 1872, with interest from that date.

13. No defense was made by Robert Maffett, and none by L. B. Maffett, except for a discount of seventy dollars, which was allowed by the Referee and by the Circuit Judge; and a judgment was recommended by the Referee and ordered by the Circuit Judge against those two for the sum of $1,803.47, with interest from 29th February, 1872.

14. The statements of monthly balances, above given, due from L. B. Maffett, as agent, to the plaintiff, are part of those submitted by the plaintiff in his bill of particulars in this action and taken from the plaintiff's books.

15. David Kibler pleaded his discharge in bankruptcy in bar of the whole claim set up by the plaintiff against him.

16. The Referee allowed that plea, and recommended a judgment in favor of David Kibler against the plaintiff, and his costs.

17. The Circuit Judge, hearing the case upon exceptions to the Referee's report, made by the plaintiff, sustained the report so far as it related to the amount due by L. B. Maffett at the time of the filing of David Kibler's petition in bankruptcy, and, therefore, decided Kibler to be discharged from $806.57 of the amount claimed by the plaintiff, but held him liable for the default of L. B. Maffett after that date, amounting to $996.90, and gave judgment against him (Kibler) for that amount and costs.

18. This appeal is brought to procure the reversal of so much of the Circuit Judge's decree as gives judgment against David Kibler for the sum of $996.90 and costs, and to procure the release of the said David Kibler from all liability to the plaintiff and from the costs of this action.

David Kibler, one of the defendants, appealed on the following grounds:

1. Because His Honor erred in holding the said defendant liable for any debt or default of the defendant, L. B. Maffett, as agent of the plaintiff.

2. Because if the said defendant, David Kibler, is liable for any debt or default of the said L. B. Maffett, as agent of the plaintiff, His Honor erred in holding him liable for any such debt or default as occurred prior to September, 1870, the date of the final settlement of the said David Kibler's estate in bankruptcy by his assignee.

3. Because His Honor erred in holding that the said David Kibler was released by his discharge in bankruptcy only from certain

breaches of the bond of the said L. B. Maffett, on which he, the said David Kibler, was surety, and not from the whole bond.

*Suber & Caldwell*, for appellant:

A discharge duly granted in bankruptcy releases the bankrupt from all debts, claims, liabilities and demands which might have been proved against his estate, except such debts as were created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character.— Bankrupt Act of 1867, §§ 33 and 34.

The appellant, David Kibler, not coming within any of the three exceptions above mentioned, inasmuch as he was not a fiduciary but only a surety on the bond of a fiduciary, L. B. Maffett, it follows that his discharge in bankruptcy released him from all debts, claims, &c., which might have been proved against his estate in bankruptcy.

A debt, claim, liability or demand is provable in bankruptcy whenever,—1st, the obligation subsisted at the time of the filing of the bankrupt's petition ; 2d, when the amount owing under or upon the obligation can be ascertained and fixed before the declaring of the final dividend, whether the liability be absolute or contingent.— Bankrupt Act of 1867, § 19; *Houston* vs. *The State*, 34 Texas, 542 ; *Jones & Calhoun* vs. *Knox*, 46 Ala., 53; *McMinn* vs. *Allen*, 67 N. C., 131; *United States* vs. *Davis*, 3 McLean, 483.

The liability of the surety of a fiduciary is therefore a contingent liability, provable against the estate of the surety in bankruptcy, whenever the fiduciary has in his hands money or property for which he is bound to account to his *cestui que trust.—Jones & Calhoun* vs. *Knox*, 46 Ala., 53; or whenever the fiduciary, being a public officer or an agent, is guilty of a default or a breach of his bond, given for the faithful discharge of his duties.—*McMinn* vs. *Allen*, 67 N. C., 131; *United States* vs. *Davis*, 3 McLean, 483.

In this case the fiduciary, L. B. Maffett, was continuously in arrears with his *cestui que trust*, the plaintiff, from the month of December, 1866, till his removal in 1872. The amount of his indebtedness in February, 1868, (the time of the filing of the appellant's petition in bankruptcy) being $806.57.

The default of the fiduciary, L. B. Maffett, at the time of the appellant's going into bankruptcy was not only provable in point of law, but the plaintiff had the information which enabled them

to prove the amount of the default against the appellant's estate in bankruptcy at all times between the filing of the appellant's petition and the settlement of his estate in September, 1870; be-- cause the plaintiff, the railroad company, struck a balance every week of accounts between it and its agents, and from these weekly balances, after giving the agents opportunity to correct errors, a balance was struck at the end of each month and forwarded to the agent, as is shown by the testimony of C. V. Carrington, an officer of and witness for the plaintiff, and by the account filed by the plaintiff with the Referee in this case.

The railroad company have only themselves to blame ,for the default of the agent, L. B. Maffett, after the bankruptcy of the appellant, for they knew of such bankruptcy, and partly, at least, on that account, endeavored to procure a new bond from L. B. Maffett, about the close of 1869 or beginning of 1870, yet did not remove him from office. And, being guilty of such laches, it would be intolerable injustice to allow them to derive a benefit from it by making good the defaults of their agents out of the property of an innocent and helpless surety.

L. B. Maffett, the agent of the plaintiff, and the principal on the bond complained upon, being a defaulter of long standing at the time of the filing of David Kibler's petition in bankruptcy, the condition of the bond was already broken, and the bond consti- tuted a debt provable against the estate of the bankrupt to the extent of the breach. But the claimant in that case, being in the position of a creditor suing upon his demand, must have presented the bond itself against the bankrupt's estate. The bond is, there- fore, deemed forfeited as to the bankrupt, and must be presented as an entirety against his estate, and cannot be withdrawn and kept open against him—except, of course, in the three cases excepted in Section 33 of the Bankrupt Act above referred to, to wit: in the cases of the debt being created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in a fiduciary capacity.

Justice Saffold says, in *Jones & Calhoun* vs. *Knox:* " We think it is the contract or obligation to be liable for the default of the guardian that the discharge in bankruptcy relieves from, and not merely the liability when fixed."

The general and fundamental principle of the bankrupt law is to release a debtor from his debts upon his making a surrender of

his estate and otherwise complying with the requirements of the Act. There is, therefore, violence done to the law whenever it is held that a discharge in bankruptcy is not a release from a debt, except in cases expressly or by necessary implication excluded from the benefit of the Act. And it especially contravenes the policy of the law, as exhibited in the amendment of 22d June, 1874, to hold a surety liable for a debt of his principal, occurring after his bankruptcy, which he could not prevent, and which arises after he is entitled to a release from his debts. For that amendment, while it requires for the discharge of a bankrupt that his assets shall equal thirty per cent. of the claims proved against his estate as principal debtor, unless by the consent of one-fourth of his creditors in number and one-third of them in value, yet does not require his assets to bear any proportion to his debts as surety, whether creditors consent to his discharge or not.—Rev. Stat. U. S., § 5112; Bump on Bankruptcy, (7th ed.,) 632.

But if the appellant's discharge in bankruptcy did not effect his release from all liability for the defaults of his principal, it certainly operated to release him from all indebtedness arising from such defaults down to the date of the declaring a final dividend in his (the bankrupt's) estate, viz., in September, 1870; for, under Section 5069 of Revised Statutes of United States, "if the bankrupt is bound as drawer, endorser, *surety*, bail, or guarantor, upon any bill, bond, note, or any other specialty or contract, or for any debt of another person, and his liability does not become absolute until after his adjudication of bankruptcy, the creditor may prove the same after such liability becomes fixed and before the final dividend is declared." The deficit of L. B. Maffett amounted, on 31st August, 1870, to $1,250.86, and on 30th September, 1870, to $1,249.30. The appellant should, therefore, in any event, be released from the sum of $1,250.86, the amount of the deficit at the time of the settlement of his estate, and not merely from $806.57, the amount of the deficit at the filing of his petition in bankruptcy.

The position taken by the plaintiff, and by the Circuit Judge in his decree, that the bond in question was a continuing obligation, and held the appellant liable for defaults committed by his principal after his, the appellant's, discharge in bankruptcy, and after the settlement of his estate, is not sustained by the bankrupt Act or by the authorities. The Act excepts from the benefit of a discharge

a debt for rent after the bankruptcy of the lessee; and the decision in *Steinmetz* vs. *Ainslie* follows the Act, because it holds that rent is a daily accruing debt for a daily furnished consideration, and, therefore, the continuing to occupy and use premises after one's bankruptcy creates a debt not existing at the time of the institution of the proceedings, and, therefore, not released by a discharge. And a debt for storage, continued after the commencement of proceedings in bankruptcy, is of the same character, and hence the decision in *Robinson* vs. *Pesant.* The principle is fully expressed in In re *May & Kerwin,* 9 Bank. Reg., 419, S. C.; 47 How. Pr. R., 37: "Rent for the time after commencement of proceedings in bankruptcy is not a provable debt. Where an article is purchased, the consideration is, or is assumed to be, executed; while, in the case of rent, the consideration is assumed to be not executed, but executory, the use and occupation being *in futoro.*" And it is decided in In re *Webb & Co.,* (6 Br. Reg., 302,) "that the landlord's right to rent against the bankrupt's estate expires on the day of adjudication."—Bump on Bankruptcy, (7th ed.,) 514, 515.

*Baxter,* contra:

1. The discharge of the appellant in bankruptcy worked no cancellation of the bond conditioned for the performance, by Levi B. Maffet, of his duty to the plaintiff as their agent, but only discharged the appellant from liability for breaches thereof anterior to the commencement of appellant's proceedings in bankruptcy, but not from liability for subsequent breaches.—*Bush* vs. *Cooper's Administrators,* (18 How. U. S., p. 82,) referred to in James's Bankrupt Law, p. 143.

2. "On a continuing contract, where the liability is incurred from day to day or month to month, a discharge in bankruptcy cannot be pleaded as a bar to any part of the liability incurred after the date of the commencement of proceedings in bankruptcy."—In Court of Appeals, N. Y., *Robinson* vs. *Peasant,* reported in 8 Nat. Bank. Reg., p. 426. In the case cited, the suit was for the recovery of money due for storage, for which the defendant was held liable, so far as the storage was subsequent to his discharge in bankruptcy, but not otherwise. The contract created by the bond, the subject of the present suit, is clearly upon its face and in its nature a continuing contract; and the judgment of the Court

below is in exact conformity with the case cited as well as the case of *Steinmetz* vs. *Ainslie*, (4 Denio, 573,) in which the same principle was applied to a suit for rent under the bankrupt Act of 1841.

The judgment of the Court below is further, but negatively, sustained by the case of *Jones & Collum* vs. *Knox*, (Supreme Court of Alabama,) reported 8 Nat. Bank. Reg., 559. The defendant pleaded his discharge in bankruptcy in bar of a recovery in favor of a minor for breaches on guardianship bond whereon the defendant was surety.

The discharge was held a complete bar to the recovery, *because the liability had become fixed and susceptible of proof before the commencement of the proceedings in bankruptcy;* but, if otherwise, would the discharge have been held such a bar? Surely not.

3. "In order to ascertain which debts are extinguished by the bankrupt's discharge, the real test is, what debts are provable under the bankruptcy?"—James's Bankrupt Law, 141. By the bankrupt's discharge, in its very terms, he is only discharged from debts provable under the bankruptcy proceedings. According to this test, from the breaches of Levi B. Maffett's bond, made by him before the bankruptcy of his surety, David Kibler, the appellant, the Court held the appellant discharged, wherein all parties acquiesce; but for the breaches of said bond made after the bankruptcy of the appellant, he, with the other defendants, was held liable. Were the subsequent breaches provable at the commencement of the bankruptcy? The bond was in force until Levi B. Maffett's removal, and the contract created thereby was continuing until that time, long after the discharge. The breaches subsequent could not possibly be proved.

October 31, 1876. The opinion of the Court was delivered by

MOSES, C. J. The position assumed for the appellant, David Kibler, that his discharge in bankruptcy operated as a full release of his obligation to the respondent of 16th September, 1856, cannot be maintained. It regards the bond as creating a debt against all the obligors through its penalty, which could only be enforced at law by an action of debt, in which a final judgment would be obtained for its full amount, and therefore it is urged that proof of any existing demand under it, in a Court of bankruptcy, extends to, covers and discharges the whole obligation, though, even at law, the amount to be collected would be restricted to the sum really

due. But an action on a bond, though only for the payment of money, is not necessarily confined to one of debt on the penalty. Covenant may be brought on the condition. In 2 Robinson's Pr., p. 58, it is said: "Covenants the performance whereof is secured by a penalty are susceptible of a two-fold remedy. 1st. An action of debt for the penalty, after the recovery of which the plaintiff cannot resort to the covenant, because the penalty is a satisfaction of the whole. 2d. An action of covenant in which the plaintiff, waiving the penalty, proceeds on the covenants and may recover more or less than the penalty—*toties quoties.*" If the respondent had offered, in the Court of Bankruptcy, proof of the liability of the appellant as surety on the bond for the faithful discharge by the principal of the duties incumbent on him as such agent, its extent would not have been measured by the penalty but by the amount then due through the default of the said L. B. Maffett, for whom the said Kibler stood bond as surety.

By Section 3719 of the Revised Statutes of the United States, (corresponding with the 34th Section of the bankrupt Act,) " a discharge duly granted shall, subject to the limitations imposed by the two preceding Sections, release the bankrupt from all debts, claims, liabilities and demands which were or might have been proved against his estate in bankruptcy." If the debt is provable, it has been uniformly held that the action is barred although it was not actually proved.

By Section 5014 of Revised Statutes, "the filing of the petition shall be an act of bankruptcy and the petitioner shall be adjudged a bankrupt."

It is laid down, both in James and Bump, the latter at page 232, referring to the authorities so deciding, "that a certificate of discharge is a bar only to debts and demands which were or might have been proved, but not as against personal covenants and engagements which were not provable. If a demand is not provable it is not barred by the certificate."

At the time of the adjudication of Kibler as a bankrupt a present right of action accrued to the company for the defalcation in the account of the agent by which a certain sum due could be ascertained. This was provable. It was "a legal debt subsisting before the bankruptcy." If the other surety had on the same day offered to pay to the company whatever sum was then due by reason of the said bond, could any further amount have lawfully been de-

manded of him? If the company could have then proved for more than such amount, by what form of oath could the claim have been verified? For what was the bankrupt actually liable when he filed his petition? Not for the penalty of the bond, but the loss in money to the company by the default of the agent. Even in an action of debt on a penalty of a bond other than for the payment of money the plaintiff may be required to submit the condition to a jury to assess the debt or damages actually due, and the execution shall be levied accordingly, though the judgment for the penalty shall stand as a security for the sum so assessed with costs.—7 Stat. at Large, 280. The company could have proved whatever demand it then had against the bankrupt, and the Circuit Judge properly held that as to these he was discharged.

We do not, however, concur with him in holding that Kibler was liable to the extent fixed by the decree. If it was competent for the company to have proved, *before the final discharge*, claims against the bankrupt, through his bond, though arising after his adjudication, on the same principle by which he is held released from the claims existing at the time of filing his petition he will be discharged from such after-accruing demands.

The 5069th Section of the Revised Statutes provides that " when the bankrupt is bound as a drawer, endorser, surety, bail or guarantor upon any bill, bond, note or any other speciality or contract, or for any debt of another person, and his liability has not become absolute until after the adjudication of bankruptcy, the creditor may prove the same after such liability has become fixed and before the final dividend has been declared." The bond in question created a continuing liability. It did not stipulate for payment of specified sums at stated periods. It was to endure while Maffett was retained as agent at the depot named, or until notice from Kibler or his co-surety that he would not be further bound. Each and every succeeding default created a new demand, from which arose a new cause of action.

The debts actually due at the time of filing the petition created an absolute liability. Those wherein the bankrupt was bound in the character specified in the said Section, and which became absolute after his adjudication but " before the final dividend was declared," are provable by the force and effect of the provision referred to. Not so, however, with a debt fixed by a default after

such time.  The discharge cannot operate upon it, because it arises after the period within which claims are allowed by the Act to be proved.

In re *Loder* (4 B. R., 190,) it was held that "a claim against a bankrupt or drawer, endorser, surety, bail or guarantor cannot be proved before the liability has become fixed.  Until that time it is not regarded as a debt due and payable, or even as a debt existing, but not payable until a future day, so as to be provable."

In *Loring* vs. *Kendall*, (1 Gray, 305,) *Fowler* vs. *Kendall*, (44 M., 448,) [we quote from Bump on Bankruptcy, 735,] it is said: "The discharge does not release a surety from liability on a bond given by an officer for the faithful performance of his duties where the breach occurred after the discharge was granted."

In the same case of *Fowler* vs. *Kendall* it was held that "a bond to secure the faithful performance of official duties is a continuing indemnity, and every breach of it is a good cause of action, affording a remedy when, and only when, each severally occurs."

It appears by the brief that on the 31st August, 1870, the deficit of Maffett, the agent, amounted to $1,250.86.  In the following month the estate of the bankrupt (Kibler) was settled up by the assignee.  To that time, in our view, the claim was provable, and the bankrupt is, therefore, released from it by his discharge.

The deficiency for which the sureties were liable on the removal of Maffett in February, 1872, was $1,803.47.  Of this amount, the bankrupt is discharged from the said $1,250.86, the sum which was provable before the last dividend was declared, leaving $552.61, with interest from 29th February, 1872, for which, with the costs, the respondent may take judgment.

The decree below is so accordingly modified.

*Wright*, A. J., and *Willard*, A. J., concurred.